**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TAJUAN MARNEZ WILLIAMS,

          Petitioner,

    v.

SHERMAN CAMPBELL,

          Respondent,

_____/

Case No. 2:15-CV-12914
HON. NANCY G. EDMUNDS
UNITED STATES DISTRICT COURT

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO**
**APPEAL *IN FORMA PAUPERIS***

Tajuan Marnez Williams, ("Petitioner"), confined at the Carson City Correctional

Facility in Carson City, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254, challenging his conviction for first-degree premeditated murder,

M.C.L.A. 750.316; felon in possession of a firearm, M.C.L.A. 750.224f; and possession of

a firearm in the commission of a felony, M.C.L.A. 750.227b.  For the reasons that follow, the

petition for writ of habeas corpus is **DENIED**.

## I. Background

Petitioner was convicted following a jury trial in the Genesee County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See*

*Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arose out of the murder of Janien Cobbin, who had
> been defendant's girlfriend.  In May 2005, Cobbin was shot and killed in her
> apartment.  On the night the police first investigated the murder, defendant

1

and two friends drove to Cobbin's apartment. While defendant and his friends were there, the police requested and received permission to search their car. The police found a handgun in the car and arrested all three men for possession of the gun. Defendant initially waived his right to counsel and told the police that he had attended car races on the night of the murder.

The prosecutor charged defendant with weapons counts but not with murder, because tests showed that the gun found in the car was not the murder weapon. Defendant pleaded guilty to certain weapons counts and was sentenced to two years' imprisonment. Defendant began serving his sentence at the Newberry prison facility, where he met fellow inmate James Hicks.

Hicks and defendant had several conversations. Hicks then contacted authorities and indicated that defendant had made incriminating statements about the murder. Hicks subsequently agreed to have a hidden recorder placed in his radio. Both Hicks and defendant were transferred to the Muskegon prison facility, where they were made cellmates. For six days their conversations were recorded, including conversations in which Hicks asked defendant about Cobbin. During the recorded conversations, defendant indicated that he had killed Cobbin. The prosecutor subsequently charged defendant with the murder.

Defendant filed several pretrial motions to suppress the prison recordings. The trial court denied the motions. Defendant also filed motions to obtain Hicks's prison file, but the Department of Corrections (DOC) did not produce the file prior to trial. At trial, Hicks and the prosecutor read excerpts of the prison recordings into evidence. Those excerpts included defendant saying, "I blew her mother fucking head off." The prosecutor played a portion of the recordings for the jury and introduced the transcript of the recordings into evidence.

The prosecution also presented expert witness Dan Harris, who testified about using cellular telephone records to identify the location of defendant's telephones at the time of the murder. Defendant objected to Harris's testimony on the ground that the prosecution had not previously identified Harris as an expert witness. The trial court overruled the objection, noting that the prosecution's mid-trial identification of Harris as a witness arose from defendant's objection to another witness's proffered testimony on the issue of cell phone location. Harris then testified that on the night of the murder, defendant's cell phones were in close geographic proximity to Cobbin's apartment. In response to Harris's testimony, defendant presented expert witness Manfred Schenk. Schenk stated that the call detail method used by Harris could not identify the location of a cell phone. Schenk explained that Harris's method could identify the location of the cell tower that handled a

2

particular call, but that there was no direct relationship between the location of the cell tower and the location of a cell phone. Schenk opined that, absent a global positioning chip, the sole accurate method to locate a cell phone during a call is "triangulation"—which was not done in this case.

The prosecution later re-called Harris. Harris acknowledged that the call detail method he used in this case could not identify the precise location of a cell phone. Harris nonetheless testified that defendant's cell phones could not have been at his alibi location (car races) at the time of the murder.

*People v. Williams*, No. 301384, 2013 WL 5629647, at *1–2 (Mich. Ct. App. Oct. 15, 2013).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 852 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Police officers illegally seized and arrested Williams without probable cause or reasonable suspicion in violation of the Fourth Amendment, and his subsequent statement to police and the police agent were inadmissible at trial as the fruit of the poisonous tree.

II. Williams's statement was obtained in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.

III. Williams was denied a fair trial by the admission of an improper photographic line-up conducted while he was in custody; there was no independent basis for the in-court identification.

IV. Williams's right to privacy and due process was violated by the surreptitious recording of private conversations between Williams and his jailhouse lawyer; his attorney-client privilege was also violated.

V. Incriminating statements obtained from Williams through Hicks, an agent for police, was in violation of the attorney-client privilege and the prophylactic rule that required police to inform Williams about the availability of counsel, Williams was denied a fair trial where statements were introduced at trial.

VI. Williams was denied "fundamental fairness" where the trial court erred in denying the motion for new trial where employees of the Department of Corrections in complicity with the Flint Township Police and the prosecutor's office violated numerous prison policies and Williams's Fourth Amendment and Due Process rights when they introduced a recording device used by an inmate to record conversations without authorization.

3

VII. The state court erred reversibly in denying Williams relief pursuant to Federal and State eavesdropping laws.

VIII. Williams was denied his constitutional rights of (a) Equal Protection; (b) Freedom of communication and association; (c) right to be free from cruel and unusual punishment and; (d) his right to the access of the court during pre-trial incarceration, making admission of his statements illegal and conviction unreliable.

IX. Williams was denied of multiple constitutional protections when the state denied his motion to suppress/dismiss the constitutionally defective arrest warrant.

X. The state court erred reversibly in denying Williams his motion to quash the bind over and dismiss the information.

XI. The state court erred in denying Williams's motion for a new trial when the prosecutor and the trial court denied his discovery request, suppressed material evidence, and denied due process and Sixth Amendment right to Confrontation.

XII. The state court should have granted Williams relief where he was denied his Sixth Amendment right to a speedy trial.

XIII. The destruction of evidence that was favorable to Williams violated his right to confront the testimony of the State's star prosecution witness.

XIV. The admission of evidence of highly inflammatory other acts that were irrelevant and not probative under FRE 404(B) or any other evidence rule denied Williams a fair trial.

XV. The surprise introduction of a voicemail recording denied Williams his right to discovery and his right to a fair trial where the recording was not adequately identified.

XVI. The introduction of surprise expert testimony from a "cell tower" expert denied Williams his right to discovery and effective cross-examination; the expert testimony was not admissible as it was not based on a recognized science; Williams was denied effective assistance of counsel and fair trial.

XVII. Williams was deprived of effective assistance of trial counsel, trial by impartial and unbiased jury, where the trial court appeared to be biased and not impartial towards Williams and defense counsel.

XVIII. Williams was deprived of a fair trial through prosecutorial misconduct

4

during closing arguments, where remarks were not supported by the evidence, were intended to inflame and appeal to the passion of the jury.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to

5

obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court is aware that although the Michigan Court of Appeals did not explicitly address several of the claims that petitioner raised on his appeal of right, the AEDPA's deferential standard nonetheless applies to these claims as well. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits" for purposes of invoking the AEDPA standard of review. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).

Petitioner filed a petition with this Court, raising eighteen claims. The Sixth Circuit recently observed: "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortgage v. Chicago Title Ins.*, 692 F.3d 507, 509 (6th Cir. 2012).

### III.  Discussion

### A.  Claims # 1, # 4, # 6, # 7, and # 9.  The Fourth Amendment claims.

Petitioner brings a number of Fourth Amendment challenges to his conviction. In his first claim, petitioner alleges that the police arrested him without probable cause, thus, any subsequent statements made by petitioner to the police should have been suppressed as the fruit of an illegal arrest. As part of his fourth claim, petitioner argues that his Fourth Amendment right to privacy was violated when the conversations between himself and Mr.

6

Hicks were secretly recorded.  Petitioner repeats this claim in his sixth claim.  In his seventh

claim, petitioner alleges that the secret recording of his conversations with Mr. Hicks violated

federal and state eavesdropping laws.   In his ninth claim, petitioner contends that the state

trial court erred in denying his motion to suppress or dismiss the allegedly defective arrest

warrant on the murder charge.

A federal habeas review of a petitioner's arrest or search by state police is barred

where the state has provided a full and fair opportunity to litigate an illegal arrest or a search

and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*,

213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must

have provided, in the abstract, a mechanism by which the petitioner could raise the claim,

and presentation of the claim must not have been frustrated by a failure of that mechanism.

*Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas

petitioner had an opportunity to litigate his claims, not whether he in fact did so or even

whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F.

Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).

Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth

Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812

(E.D. Mich. 2009).  Moreover, this Court does not look into the adequacy of the procedures

used to litigate petitioner's various Fourth Amendment claims in the state courts.   The Sixth

Circuit noted that "[t]he *Powell* 'opportunity for full and fair consideration' means an available

avenue for the prisoner to present his claim to the state courts, not an inquiry into the

adequacy of the procedure actually used to resolve that particular claim." *See Good v.

Berghuis,* 729 F. 3d 636, 639 (6th Cir. 2013).

7

In the present case, petitioner was able to present his Fourth Amendment claims to the state trial court in his pre-trial motions to suppress and was later able to present his Fourth Amendment claims to the Michigan appellate courts.  That is sufficient to preclude review of the claims on habeas review. *Good v. Berghuis,* 729 F. 3d at 640.  Moreover, because petitioner had an opportunity to challenge the admission of his statements to Hicks as a form of illegal eavesdropping, he is not entitled to habeas relief on any claim that the admission of this evidence violated his Fourth Amendment rights. *See e.g. Crawford v. Artuz,* 165 F. Supp. 2d 627, 637 (S.D.N.Y. 2001).

### B.  Claims # 2, # 4, and # 5.  The claims relating to petitioner's statements to Mr. Hicks.

The Court consolidates petitioner's second, fourth, and fifth claims together because they are interrelated and overlap.

In his second claim, petitioner argues that his Sixth Amendment right to counsel and his Fifth Amendment right to remain silent were violated when Mr. Hicks tape recorded his confessions to the murder in prison.

Petitioner first claims that his Sixth Amendment right to counsel was violated because he had been represented by an attorney on the original weapons charges that he pleaded guilty to and was still in the process of appealing that conviction with the assistance of counsel at the time that Mr. Hicks initiated the conversations in which petitioner incriminated himself.

The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information,

8

or arraignment." *Texas v. Cobb,* 532 U.S. 162, 167-68 (2001)(quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)(internal citations and quotation marks omitted); *See also Davis v. U.S.,* 512 U.S. 452, 456-57 (1994).   Moreover, there is no exception to this rule for uncharged crimes that are "factually related" to a charged offense. *Texas v. Cobb*, 532 U.S. at 167-68.   Petitioner had not been formally charged with the murder at the time that he spoke with Mr. Hicks, thus, the fact that he may have been represented by counsel on the weapons charges, even if they were factually related to the uncharged murder, would not bar Mr. Hicks from speaking with petitioner about the murder. *Id.,* at 173.

Petitioner further claims that his Fifth and Sixth Amendment rights under *Miranda* were violated when Mr. Hicks spoke with petitioner and recorded his confessions.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).   Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda,* 384 U.S. at 444.

Petitioner first suggests that Mr. Hicks should have advised him of his *Miranda* warnings before obtaining incriminating admissions from him.   In *Illinois v. Perkins*, 496 U.S. 292, 300 (1990), the Supreme Court held that an undercover law enforcement officer posing

as a fellow inmate was not required to give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response. The Supreme Court reasoned that "Conversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*. The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate." *Id.,* at 296. The Supreme Court further opined that "When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." *Id.* Other courts have extended the rationale in *Perkins* to hold that a prisoner acting as an undercover informant is not required to administer *Miranda* warnings prior to obtaining incriminating statements from a defendant. *See United States v. Cook*, 599 F.3d 1208, 1213-14 (10th Cir. 2010). Mr. Hicks was acting as an undercover informant, thus, he was not required to administer *Miranda* warnings to petitioner prior to recording his statements.

In addition, petitioner was not subjected to a custodial interrogation at the time that he made his incriminating remarks to Mr. Hicks.

In *Howes v. Fields,* 132 S. Ct. 1181, 1190 (2012) the Supreme Court concluded "that imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." The Supreme Court indicated that there were three rationales for concluding that an inmate is not in custody, for purposes of *Miranda*. "First, questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest." *Id.* Secondly, for a person who is already imprisoned, "the ordinary restrictions of prison life, while no doubt unpleasant, are expected and familiar and thus do not involve the same 'inherently compelling pressures' that are often present when a

10

suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station." *Id.,* 1191.   Finally, a prisoner knows that any law enforcement personnel who question him or her probably lack the authority to affect his or her sentence. *Id.*  To determine whether a prisoner is in custody, for the purpose of *Miranda,* requires a court to analyze "all of the features of the interrogation" including "the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id.* at 1192.

In the present case, there is no evidence that petitioner was threatened.   Petitioner was questioned in his own cell by Mr. Hicks.   There is no evidence that Mr. Hicks used sharp language against petitioner.   There is no allegation that petitioner was deprived of sleep, food, drink, or bathroom privileges.   Under these circumstances, the Michigan Court of Appeals reasonably concluded that petitioner was not in a coercive environment that required the giving of *Miranda* warnings. *Howes v. Fields*, 132 S. Ct. at 1193.

Petitioner, however, argues further that because he invoked his right to counsel during his initial interrogation with the police in 2005, Mr. Hicks should not have been permitted to attempt to elicit incriminating information.

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).   The *Miranda-Edwards* rule, however, applies only to custodial interrogations. *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009).   "If the defendant is not in custody then those decisions do not apply." *Id.*  Petitioner's conversations with Mr. Hicks did not take place in a custodial setting, thus, the holding in *Edwards* does not apply, even if petitioner previously

11

invoked his right to counsel when he spoke to the police in 2005. *Cook,* 599 F. 3d at 1214-15.

Moreover, the *Edwards* rule does not apply if there has been a break in custody of more than 14 days after the accused invokes his right to counsel. *See Maryland v. Shatzer,* 559 U.S. 98, 110-11 (2010). In the prison context, where an inmate has returned to the general prison population after invoking his or her right to counsel during a custodial interrogation, there has been a break in custody for purposes of the *Edwards* rule. *Id.,* 113-14. Petitioner invoked his right to counsel when he spoke with the police in May of 2005. Petitioner did not make his statements to Mr. Hicks until some 14 months later in prison, way after there had been a break in custody with his initial police interrogation. Under the circumstances, the admission of petitioner's statements to Mr. Hicks did not violate *Edwards.*

As part of his fourth claim, petitioner contends that the admission of his recorded statements to Mr. Hicks violated his attorney-client privilege because Mr. Hicks was acting as petitioner's jailhouse lawyer.

The attorney-client privilege is a creation of the common law, not the federal constitution. *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010)(quoting *Lange v. Young,* 869 F. 2d 1008, 1012, n. 2 (7th Cir. 1989)). Because federal habeas review is limited to violations of the United States Constitution or its laws and treatises, any violation of a habeas petitioner's attorney-client privilege would not warrant habeas relief. *Id.* Any alleged violation of petitioner's attorney-client privilege is therefore not cognizable in federal habeas review. Moreover, petitioner has not established that such an attorney-client privilege even existed between himself and a fellow jail inmate. *See Moorhead v. Lane,* 125 F.R.D. 680,

12

686 (C.D. Ill. 1989)(attorney-client privilege does not extend to communications made to a "jailhouse attorney"); *See also State v. Owens,* 309 S.C. 402, 408; 424 S.E. 2d 473 (S.C. 1992)(incriminating statements made by defendant to fellow inmate/"jailhouse lawyer" were not protected by attorney-client privilege;  although such "jailhouse lawyers" may be of assistance to other inmates in preparing petitions or briefs, they are not professional advisors upon whom clients rely and to whom clients impart their strictest confidences). Petitioner is not entitled to relief on his second, fourth, and fifth claims.

### C.  Claim # 3.  The suggestive identification claim.

Petitioner next claims that he was subjected to a suggestive identification procedure because the police conducted a photographic lineup with witness Andrew Cronin, even though petitioner was already in custody.  Mr. Cronin testified that on the day of the murder, he saw an African-American man walking down the road with an African-American woman. Cronin said that the man looked suspicious because the way he was holding the woman's arm.  Cronin identified petitioner as the man he saw that day.  Petitioner argues that the police should have conducted a corporeal lineup with Mr. Cronin because petitioner was already in custody at the time of the photographic showup.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972).  Five factors should be considered

13

in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992).

A defendant does not have a constitutional right to a corporeal line-up. Instead, his or her request is addressed to the trial court's sound discretion. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith,* 207 F .Supp. 2d 627, 645 (E.D. Mich. 2002). Thus, the failure to conduct a live line-up in this case would not entitle petitioner to habeas relief.

Petitioner further claims that the photographic lineup was unduly suggestive because Mr. Cronin first saw petitioner's picture in the newspaper and the police used this same photograph in the lineup.

14

Mr. Cronin testified that he did not remember seeing any articles about petitioner in the newspaper. (Tr. 9/10/10, pp. 18-19).   Petitioner has not shown that Mr. Cronin's identification was bolstered by his prior viewing of petitioner's photograph in the newspaper. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding).   Petitioner is not entitled to habeas relief because his claim that the photo array was unduly suggestive is conclusory and unsupported. *See Champ v. Zavaras,* 431 F. App'x. 641, 654 (10th Cir. 2011).

**D.  Claim # 6.  The prison administrative procedures claim.**

As part of his sixth claim, petitioner claims that the Michigan Department of Corrections violated its own prison administrative rules regarding the placement of a recording device in his prison cell.

"[A] federal court may not grant habeas relief based on 'a perceived error of state law.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)(*quoting Pulley v. Harris*, 465 U.S. 37, 41 (1984).   Furthermore, state officials are not required to follow their own procedural statutes and rules as a matter of federal due process. *Sweeton v. Brown*, 27 F. 3d 1162, 1165 (6th Cir. 1994)(en banc); *See also Coleman v. Martin,* 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005).   Petitioner is therefore not entitled to habeas relief on his sixth claim.

**E.   Claim # 8.   The equal protection, freedom of communication and association, cruel and unusual punishment, and access to the courts claims.**

In his eighth claim, petitioner contends that his conviction violates his right to equal protection, his right against cruel and unusual punishment, his right to freedom of

15

communication and association, and his right of access to the courts.  Petitioner also appears to argue that he has a mental health problem that rendered him susceptible to Mr. Hicks's questioning.

The Michigan Court of Appeals rejected petitioner's claims because he failed to offer any citations or caselaw in support of his claim:

> Defendant provides no persuasive or binding citation to support these assertions. We therefore conclude that defendant has waived these assertions.

> *People v. Williams*, 2013 WL 5629647, at * 5, n. 3.

Under Michigan law, a party who fails to develop any argument or cite any authority in support of his or her claim waives appellate review of the issue. *People v. Griffin*, 235 Mich. App. 27, 45, 597 N.W.2d 176 (1999).   "A party may not merely state a position and then leave it to [the Michigan Court of Appeals] to discover and rationalize the basis for the claim." *Id.*

A state court conclusion that an issue was waived is considered a procedural default. *See e.g. Shahideh v. McKee*, 488 F. App'x. 963, 965 (6th Cir. 2012).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent,

16

a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner raised his eighth claim in his Standard 4 pro per brief that he submitted in addition to the brief submitted by appellate counsel. [1] Petitioner has offered no reasons for his failure to properly brief this claim. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, petitioner's claim is procedurally defaulted. *Pearl v. Cason,* 219 F. Supp. 2d 820, 828 (E.D. Mich. 2002). Petitioner is therefore not entitled to habeas relief on his eighth claim.

**F. Claim # 10. The improper bindover claim.**

Petitioner next contends that there was insufficient evidence at the preliminary examination to support his bindover to the circuit court.

Petitioner has failed to state a claim upon which habeas relief can be granted. A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*, 420

---

[1] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

U.S. 103, 119 (1975).  There is no federal constitutional right to a preliminary examination. *United States v. Mulligan*, 520 F. 2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F. 2d 789, 790 (6th Cir. 1965).  Petitioner's claim that there was insufficient evidence presented at his preliminary examination to bind him over for trial thus raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *See Tegeler v. Renico,* 253 F. App'x. 521, 525-26 (6th Cir. 2007).  Moreover, even if the prosecution presented perjured testimony at the preliminary examination, as petitioner suggests, this would not call into question the validity of petitioner's subsequent conviction or entitle him to habeas relief. *See Cardenas-Borbon v. Burt*, No. 10-13548, 2014 WL 793629, at *21 (E.D. Mich. Feb. 27, 2014).

In addition, a guilty verdict renders harmless any error in the charging decision. *See United States v. Mechanik,* 475 U.S. 66, 73 (1986).  Any insufficiency of evidence at petitioner's preliminary examination would be harmless error in light of petitioner's subsequent conviction. *See Redmond v. Worthinton,* 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012).

Petitioner further claims that Mr. Hicks' Fifth Amendment privilege against self-incrimination was violated at the preliminary examination when he was compelled to testify against petitioner.

While the Fifth Amendment right against compelled incrimination is a personal right and may not be asserted on another's behalf, the Sixth Circuit has held that use of another person's coerced testimony may violate a defendant's rights under the Due Process Clause of the Fourteenth Amendment. *See Bradford v. Johnson*, 476 F. 2d 66 (6th Cir. 1973), *aff'g* 354 F.Supp. 1331 (E.D. Mich.1972).  Petitioner, nonetheless, is not entitled to habeas relief

18

on his claim for several reasons.

First, the Sixth Circuit decided *Bradford* many years prior to the enactment of the AEDPA. A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-531 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

The Supreme Court had not yet decided whether the admission of a coerced third-party statement against a criminal defendant is unconstitutional. *See Samuel v. Frank,* 525 F. 3d 566, 569 (7th Cir. 2008)(sexual assault victim's out of court statements to the police were admissible even though the police told the victim she would not get her baby back if she did not cooperate). Exclusionary rules have increasingly fallen out of favor, replaced by a trend to permit the introduction of illegally obtained evidence at trial but to permit the victim of illegal police conduct to maintain a tort action against the police. *Id.* at 570. Moreover, "the concern with coerced statements is a concern with confessions or other self-incriminating statements, rather than the coercion itself." *Id.* A witness's coerced testimony is different from a defendant's coerced statement because "confessions tend to be devastating evidence in a jury trial because jurors find it difficult to imagine someone confessing to a crime if he is not guilty, unless the pressures exerted on him to confess were overwhelming." *Id.* The fact that the case for exclusion of a third-party's coerced statement "is so much weaker...than in the case of a defendant's coerced confession is a further clue

19

that exclusion would require the creation of new law rather than the application of an existing principle." *Id.* Therefore, whether a state court is "right or wrong to refuse to extend the bar against the use of a defendant's coerced statement to that of a nondefendant witness," a state court would not be "unreasonable in refusing to do so[;]". *Id.* at 571.

In the absence of any clearly established federal law requiring the suppression of a non-defendant witness' coerced testimony, petitioner would not be entitled to habeas relief on his claim.

Petitioner further appears to argue that his trial counsel was ineffective for failing to file a motion to quash the information or otherwise challenge the bindover.

The Michigan Court of Appeals determined that there was sufficient evidence to justify petitioner's bindover to the circuit court. Petitioner is unable to show that counsel was ineffective for failing to file a motion to quash the information. *See e.g. Dell v. Straub,* 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002)(counsel not ineffective for failing to object to the allegedly improper bindover of petitioner at the preliminary examination, when there was sufficient evidence presented at the examination to justify the bindover).

**G. Claims ## 11, 13, 15, and 16. The various discovery claims.**

The Court consolidates petitioner's eleventh, thirteenth, fifteenth, and sixteenth claims because they all involve issues relating to the discovery or preservation of evidence.

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010)(*citing Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated

20

state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002); *See also Friday v. Straub,* 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001).

Petitioner first alleges in his eleventh claim that the prosecutor improperly withheld Mr. Hicks' records from the Michigan Department of Corrections, which he claims could have been used to impeach Mr. Hicks' credibility.

The Michigan Court of Appeals rejected petitioner's claim:

We conclude that the information in the prison file was cumulative to the information defendant elicited about Hicks at trial. Hicks plainly acknowledged at trial that he was testifying against defendant in the hope of obtaining a reduction of his own sentence. Hicks also acknowledged he had been deemed a prison "snitch." In addition, defendant's counsel cross-examined Hicks about his criminal record and about inconsistencies in Hicks's testimony.

Further, as the trial court recognized when it denied defendant's motion for a new trial, the key factual issue in this case was whether *defendant's* assertions in the recording were credible. In contrast, the credibility of Hicks was tangential to the issue of defendant's recorded assertions about the murder. Given that the prison file contained information that was cumulative to the impeachment evidence presented at trial, and that Hicks's trial testimony against defendant was tangential to the issue of defendant's credibility on the recording, the trial court correctly denied defendant's motion for a new trial under *Cress*, 468 Mich. at 692. [2] Similarly, because defendant has not demonstrated that the evidence in the prison file could have altered the trial outcome, defendant has not established plain error that would require reversal on constitutional grounds. *Carines*, 460 Mich. at 774. [3]

*People v. Williams*, 2013 WL 5629647, at * 4 (emphasis original).

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the

---

[2] *People v. Cress*, 468 Mich. 678, 692, 664 N.W.2d 174, 182 (2003).

[3] *People v. Carines*, 460 Mich. 750, 773, 597 N.W.2d 130, 143 (1999)

defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner's *Brady* claim fails for several reasons.

First, the M.D.O.C. records were never in the possession of the prosecutor.  The requirements of *Brady* do not apply to "information that is not wholly within control of the prosecution." *Coe v. Bell,* 161 F. 3d 320, 344 (6th Cir. 1998).  Because these records were never in the prosecution's control, they had no duty to turn these records over to the defense.

Secondly, any additional impeachment evidence contained in Mr. Hicks's prison records would have been cumulatlve of the extensive evidence that was admitted at trial to impeach his credibility.  Mr. Hicks admitted that he was testifying against petitioner in the expectation of receiving a reduction of his own sentence.  Hicks admitted that he was a prison "snitch."   Mr. Hicks was cross-examined about his criminal record and the inconsistencies in his testimony.   "Evidence that is "merely cumulative" to evidence presented at trial is 'not material for purposes of *Brady* analysis.'" *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010)(*quoting Carter v. Mitchell*, 443 F.3d 517, 533 n. 7 (6th Cir. 2006)).  Because Mr. Hicks had already been extensively impeached with the fact that he was a convicted criminal and a snitch who was testifying in exchange for a possible sentence reduction, any additional impeachment evidence would have been cumulative and

22

its non-disclosure did not violate *Brady. Id.,* at 893-94.

In his thirteenth claim, petitioner claims that the prosecutor failed to preserve potentially exculpatory evidence. Petitioner specifically claims that Mr. Hicks made other recordings of petitioner in his cell which would show that petitioner denied killing the victim. Petitioner also claims that the prosecutor failed to preserve the recording device or the original digital copies of the recordings that were introduced at trial.

The *Brady* rule extends to evidence that is not suppressed but is altered or destroyed. *See California v. Trombetta,* 467 U.S. 479, 489 (1984). For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89.

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F.

23

Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted).  The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.*  "The presence of absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n.

Petitioner's claim fails because his contention that any of this evidence contained exculpatory material is entirely speculative. *See United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996).  "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Id.,* (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Petitioner's claim also fails because he has not shown that the police acted in bad faith when they failed to preserve some of this evidence.  The recording device was destroyed from water damage from further use, thus, it was not deliberately destroyed. (Tr. 5/27/10, p. 10).  Moreover, the recording device and the recordings it made were digital. Digital copies were made and given to petitioner and his counsel. (*Id.*, pp. 9-10).  Digital copies are as good as the original recording because every copy is identical to the original. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 928-29 (2005). Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum,* 276 F. Supp. 2d at 683.

Finally, petitioner's main contention is that this missing evidence would establish that his admissions to killing the victim were untrue.  Petitioner, acknowledges, however that Mr. Hicks admitted at trial that he did not believe petitioner at first when he brought up the murder.   Mr. Hicks further admitted that prisoners sometimes falsely claim to have committed serious crimes to appear meaner or tougher.   Defense witnesses called by petitioner testified in a similar manner.  In light of the fact that the same information that may have been contained within these recordings from the witnesses themselves, petitioner is unable to establish that the destruction of these tapes deprived petitioner of his due process right to a fair trial. *See Bowling v. Parker,* 138 F. Supp. 2d 821, 885 (E.D. Ky. 2001).

In his fifteenth claim, petitioner claims that the surprise admission of a voice mail recording from the victim's voice mail that was attributed to petitioner violated his right to due process because it was not properly authenticated.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).  Petitioner's claim that the voicemail recording was not properly authenticated under Michigan evidence law is not a cognizable habeas corpus claim. *See Hennis v. Warden, Chillicothe Corr. Inst.*, 886 F. Supp. 2d 797, 807 (S.D. Ohio 2012).  Moreover, petitioner has

25

offered no evidence that it was not his voice on the voicemail.  Petitioner is not entitled to relief on his fifteenth claim.

In his sixteenth claim, petitioner contends that his due process rights were violated because the prosecutor failed to disclose Dan Harris as a witness until the middle of trial. Petitioner argues that Harris' testimony came as a surprise to him.  Petitioner further claims that Harris should not have been permitted to testify as an expert witness on cell phone locations because his testimony was unscientific.

There is no constitutional duty for a prosecutor to disclose all of his or her witnesses to the defense prior to trial. *See Weatherford v. Bursey*, 429 U.S. at 559 (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent).  "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Id.*  A claim that a prosecutor violates a state discovery rule requiring the state to disclose the names of witnesses it reasonably anticipates calling is not cognizable on federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d at 439-41.  Moreover, a decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion. *See Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D.Mich.1999)(citing cases); *Whalen v. Johnson*, 438 F.Supp. 1198 (E.D. Mich.1977)(it is not a fundamental error to permit a prosecutor to endorse a witness during trial even though the prosecutor had previously filed an affidavit stating that the witness was not material).

The late endorsement of Dan Harris as an expert witness did not violate petitioner's

26

due process rights, because petitioner should have reasonably anticipated his testimony, in light of the evidence and the additional discovery in this case. *See e.g. Warlick v. Romanowski*, 367 F. App'x. 634, 643–44 (6th Cir. 2010). Additionally, petitioner was not prejudiced by the decision to allow Mr. Harris to testify because he had ample opportunity to cross-examine him about problems with his expert testimony. *Id.* at 644. Petitioner was also able to challenge Mr. Harris' expert testimony by calling his own expert, Manfred Schenk, who testified that the call detail method used by Harris could not identify the location of a cell phone and that there was no direct relationship between the location of the cell tower and the location of a cell phone. Schenk also testified that, absent a global positioning chip, the sole accurate method to locate a cell phone during a call would be by using "triangulation", which was not done in this case.

Petitioner further claims that Dan Harris should not have been permitted to testify as an expert on the location of cell phone calls because his testimony was unscientific.

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). Thus, a federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008). The United States Supreme Court's holding in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) involving the admissibility of scientific evidence concerned the application of the Federal

27

Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction. *See Norris v. Schotten,* 146 F. 3d 314, 335 (6th Cir. 1998).  In addition, as a state evidentiary matter, petitioner has presented no argument to show that Dan Harris's testimony on cell tower phones was admitted in error nor any reason to believe that this testimony denied petitioner a fundamentally fair trial. *Id.*  Petitioner's counsel was able to cross-examine Dan Harris about his methodology.  Mr. Harris admitted the call detail method he used in this case could not identify the precise location of a cell phone. Moreover, any error in permitting Dan Harris to offer testify as an expert on cell tower method was rendered harmless in this case by virtue of the fact that petitioner's own expert testified and discredited the scientific reliability of Mr. Harris's methods. *See Ford v. Seabold,* 841 F. 2d 677, 693 (6th Cir. 1988).  Petitioner is not entitled to relief on his claim.

### H. Claim # 12.  The speedy trial claim.

Petitioner next claims that his Sixth Amendment right to a speedy trial was violated because he was not brought to trial until over two years after his arrest.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI.  To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533.  The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon,* 556

U.S. 81, 89 (2009)(quoting *Barker*, 407 U.S., at 522)(quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52 (1992). Courts have generally found postaccusation delays that approach one year to be "presumptively prejudicial". *Id.* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000). Petitioner was charged on April 10, 2007 and brought to trial over three years later on August 31, 2010. Because this delay between petitioner's arrest and trial is presumptively prejudicial, this Court must engage in an examination of the remaining *Barker* factors. See *U.S. v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006).

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005)(citing *Doggett*, 505 U.S. at 651). When evaluating a speedy trial claim, delays caused by the defense are to be weighed against the defendant. *Vermont v. Brillon,* 556 U.S. at 90; See also *U.S. v. Brown*, 498 F. 3d 523, 531 (6th Cir. 2007).

Most of the delays in this case were attributable to petitioner. The Court first notes that petitioner went through nine different attorneys after expressing his dissatisfaction with

his various counsel.  Petitioner's continued requests for the appointment of new counsel is attributable to the defense, for speedy trial purposes. *See United States v. Brown*, 498 F.3d at 531.

Likewise, any delays caused by petitioner's filing of his numerous various pre-trial motions is attributable to the defense, for purposes of a speedy trial determination. *See Norris v. Schotten,* 146 F. 3d at 327.  In addition, the need to conduct an evidentiary hearing on petitioner's motion to suppress is also a delay that would be attributable to petitioner. *See United States v. Kaylor,* 877 F. 2d 658, 663 (8th Cir. 1989).

Moreover, petitioner's speedy trial claim fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F. 3d at 327-28.  There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004)(quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner. *Id.;* See also *Brown*, 498 F. 3d at 531.

With regard to the third *Barker* factor, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32.  A criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.*

In the present case, petitioner did not assert his right to a speedy trial until September 8, 2009, or some two years after he had been arrested.  Petitioner's two year delay in asserting his right to a speedy trial weighs against a finding that his right to a speedy trial

was violated. See *U.S. v. Flowers,* 476 F. App'x. 55, 63 (6th Cir. 2012).

Finally, petitioner is not entitled to habeas relief on his speedy trial claim, because he has not shown that his defense was prejudiced by this delay. *Burns*, 328 F. Supp. 2d at 722. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. See *Trigg v. State of Tenn.*, 507 F. 3d 949, 954 (6th Cir. 1975). Moreover, any prejudice to petitioner from his pre-trial incarceration "is too slight to constitute an unconstitutional denial of his right to a speedy trial," in light of the fact that the other *Barker* factors do not support petitioner's speedy trial claim. See *Wells v. Petsock,* 941 F. 2d 253, 259 (3rd Cir. 1991). Petitioner is not entitled to habeas relief on his speedy trial claim.

### I. Claim # 14.  The prior bad acts evidence claim.

Petitioner claims that the trial court violated his due process rights by admitting prior bad acts evidence involving other violent acts committed by petitioner against the victim.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

### J.  Claims # 1, # 16, and # 17.  The ineffective assistance of counsel claims.

Petitioner claims that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland*

32

standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

As part of his first claim, petitioner argues that his trial counsel was ineffective for failing to challenge the legality of his arrest at the victim's home in 2005, in order to suppress the  subsequent statements that petitioner made to Mr. Hicks.

Respondent contends that this portion of petitioner's first claim is unexhausted because he never presented it to the state courts.

A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  Petitioner's ineffective assistance of counsel claim lacks merit.  In the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *See Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir.1991).

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his or her Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The Michigan Court of Appeals rejected petitioner's Fourth Amendment claim:

> Even if the guilty plea did not constitute a waiver, we would conclude that any causal connection between the allegedly invalid arrest on the weapons charges and defendant's subsequent conviction for murder was so attenuated that suppression of defendant's subsequently recorded assertions would not be required.
> *People v. Williams*, 2013 WL 5629647, at * 5.

The "fruits of the poisonous tree" doctrine provides that evidence obtained following or during illegal police conduct-*e.g.*, confessions obtained during illegal custodial interrogation or consents obtained following an illegal entry-are inadmissible at trial if the statements or other evidence were obtained as a result of the prior illegality and not as a result of the accused's exercise of free will. *Florida v. Royer*, 460 U.S. 491, 501 (1983); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

However, where a court finds that an illegal arrest was followed by the seizure of evidence, a court must further determine "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint'" of the illegal police conduct. *Segura v. United States,* 468 U.S. 796, 805 (1984)(internal quotation omitted).  A broad "but for" relationship is not the standard for dissipation. *Wong Sun*, 371 U.S. at 487-88.  Instead, courts look for a "close causal

34

connection" between the illegality and the evidence obtained. *Dunaway v. New York*, 442 U.S. 200, 218 (1979). The taint of the illegal arrest or seizure can be removed if the evidence is obtained from an independent source unrelated to the illegality, if the evidence would have been inevitably discovered through "clean" sources, or if circumstances demonstrate that the taint is sufficiently attenuated. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 639, n. 4 (E.D. Mich. 2001)(*citing Nix v. Williams*, 467 U.S. 431 (1984), *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

Petitioner was arrested on the weapons charges in May of 2005. Petitioner did not start making incriminating statements to Mr. Hicks until some 14 months later. Petitioner's initial arrest on unrelated charges in 2005 was far too attenuated from his later confessions to the murder in his prison cell to justify their suppression, thus, counsel was not ineffective for failing to move for the suppression of petitioner's statements to Mr. Hicks on this basis. See *Friday v. Pitcher*, 200 F. Supp. 2d 725, 736-39 (E.D. Mich. 2002).

As part of his sixteenth claim, petitioner alleged that his trial counsel was ineffective regarding his handling of expert witness Dan Harris and his own expert witness Manfred Schenk.

The Michigan Court of Appeals rejected petitioner's claim:

> The record demonstrates that defendant's counsel interviewed Harris prior to Harris's trial testimony. At trial, defendant's counsel questioned Harris about his training and cross-examined Harris about the accuracy of Harris's method of locating cell phones. Moreover, defendant's counsel presented expert Schenk to discredit Harris's testimony. In sum, defendant's counsel's performance with regard to the expert witnesses at trial was reasonable.

> *People v. Williams*, 2013 WL 5629647, at * 3.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare for the expert testimony because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002). Petitioner is not entitled to relief on his sixteenth claim.

In his seventeenth claim, petitioner alleges that the trial judge was biased against him and that his trial counsel was ineffective for failing to move to disqualify the trial judge.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. See *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  However, to state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States v. Lowe*, 106 F. 3d 1498, 1504 (6th Cir. 1997).  "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" *Getsy v. Mitchell,* 495 F.3d 295, 311 (6th Cir. 2007)(quoting *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006)).

Petitioner's main allegation of judicial bias involves examples of the judge setting various deadlines regarding the filings or in one case, telling one of petitioner's nine different attorneys to file the pro per motions that petitioner prepared to be submitted without making any changes.  Petitioner also points to a couple of adverse rulings made by the judge during

36

trial.  Adverse rulings are not themselves sufficient to establish bias or prejudice which will disqualify a judge. *See Hence v. Smith,* 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999); *See also Vliet v. Renico,* 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002).

Petitioner further points to several times where the judge urged defense counsel to move along with his questioning of the witnesses.

The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).   "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*  The judge's admonitions to counsel were nothing more than efforts at courtroom administration and thus do not demonstrate bias on the judge's part.  In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself.  There is no showing that the trial judge ever intimated his opinion on the merits of the case." *See Todd v. Stegal,* 40 F. App'x. 25, 27 (6th Cir. 2002).

Petitioner further claims that the judge improperly injected himself into the proceedings by questioning several of the witnesses.

A trial judge may interject himself or herself "into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation." *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007).  In the present case, the trial court judge interjected himself only to clarify the witnesses' testimony.  It is not unconstitutional under the Due Process Clause for a state trial judge to seek clarification from witnesses at a criminal trial. *See Wenglikowski v. Jones,* 306 F. Supp. 2d 688, 695

37

(E.D. Mich. 2004).  "In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony." *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

Petitioner also points to several anecdotes and humorous stories that the judge told the jurors during breaks in the trial.  None of the judge's remarks mentioned petitioner or criminal defendants in general and appear to simply be an attempt to humor the jurors during breaks in the proceedings.

Petitioner further argues that the judge was biased against him because he interrupted the cross-examination of prosecution witness Andrew Cronin to bring up the judge's relationship with Mr. Cronin's father.  The judge later made a record that one of the jurors was a distant cousin of Mr. Cronin.

This Court has reviewed the judge's comments to Mr. Cronin.  The judge stated to Mr. Cronin, "You look like you're related to Donald."  Mr. Cronin replied, "My father." (Tr. 9/10/2010, p. 22).  There is no indication from this exchange concerning the extent of the judge's relationship with Mr. Cronin's father.  Later on, the judge indicated that Juror # 6 realized that he was a distant relative of Mr. Cronin but had not seen him since the funeral of Mr. Cronin's father. (*Id.,* p. 74).  Again, there is nothing from this comment to suggest whether the judge had any relationship with Mr. Cronin's father.

The Sixth Circuit had indicated that it is "clear that judicial disqualification based on a likelihood or an appearance of bias is not always of constitutional significance; indeed, 'most matters relating to judicial disqualification d[o] not rise to a constitutional level.'" *Railey v. Webb*, 540 F.3d 393, 400 (6th Cir. 2008)(quoting *Fed. Trade Comm'n v. Cement Inst.*,

333 U.S. 683, 702 (1948) (citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927))("All questions of judicial qualification may not involve constitutional validity.").  The Sixth Circuit observed that "[i]n only two types of cases has the Supreme Court actually held that something less than actual bias violates constitutional due process—(1) those cases in which the judge 'has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion;' and (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor.'"*Railey v. Webb*, 540 F.3d at 400 (citations omitted)(alteration in original)(quoting, respectively, *Tumey v. Ohio*, 273 U.S. at 523 and *In re Murchison*, 349 U.S. 133 (1955)).  The Sixth Circuit noted that the Supreme Court had also acknowledged four types of cases that, "although they present prudent grounds for disqualification as a matter of common sense, ethics, or 'legislative discretion,' generally do not rise to a *constitutional* level-'matters of [1] kinship, [2] personal bias, [3] state policy, [and][4] remoteness of interest.'" *Railey*, 540 F. 3d at 400 (citing *Tumey*, 273 U.S. 510, 523; accord *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986))(emphasis original).

In *Railey*, the petitioner claimed that an apparent conflict of interest arose because the judge was the nephew of the prosecutor who presided at the habeas petitioner's bail and plea hearings.  The Sixth Circuit concluded that there was no clearly established Supreme Court law that a habeas petitioner's due process rights are violated based upon the likelihood or appearance of bias based on kinship between the judge and the prosecutor. *Id.* at 401.  After reviewing the relevant Supreme Court caselaw on judicial bias, *Id.*, pp. 401-07, the Sixth Circuit concluded:

> In sum, one *could* read the Supreme Court precedent in this area as holding
> that the probability of bias-based on a likelihood or appearance of bias-can be

sufficient to disqualify a judge and violate a party's constitutional right to due process.  But, one *could also* read these cases as holding that, other than in cases of contempt arising in a closed (secret) hearing, only actual bias or pecuniary-interest-based probability is sufficient-and, moreover, that a matter of mere kinship has, as of yet, never been acknowledged as a sufficiently biasing interest.  Regardless of the preferred reading-or the merits of one reading over the other-the fact that there are two or more reasonable readings compels the conclusion that this precedent is not "clearly established."

*Railey v. Webb*, 540 F.3d at 407 (emphasis original).

Indeed, the Supreme Court in *Tumey* suggested that "matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion." *Tumey*, 273 U.S. at 523.

In the present case, petitioner has established that the judge might have had some sort of the unspecified relationship with Mr. Cronin's father.  Any determination by the state courts that the judge was not required to recuse himself, was not contrary to or an unreasonable application of clearly established Supreme Court precedent, where the Supreme Court has never held that the mere appearance of bias, outside limited contexts, could give rise to a due process violation. *Railey v. Webb*, 540 F.3d at 413-14.

Petitioner finally claims that the judge should have recused himself to avoid the appearance of impropriety because the judge had been the target of "personal abuse and criticism" on petitioner's part.  As mentioned above, the Supreme Court has never held that the mere appearance of bias gives rise to a due process violation, thus, petitioner failed to show that the judge was required to disqualify himself in this matter.

Petitioner failed to show that the judge was biased against him, thus, counsel was not ineffective for failing to move for the judge to be disqualified. See *Coley v. Bagley*, 706

40

F. 3d 741, 752 (6th Cir. 2013).  Petitioner is not entitled to relief on his seventeenth claim.

### K. Claim # 18.  The prosecutorial misconduct claim.

Petitioner lastly claims that he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first claims that the prosecutor misrepresented the facts by stating that she believed that the victim was killed between 11:40 p.m. and 12:09 a.m., when there was evidence that the victim was still alive at these times.  Petitioner further claims that the prosecutor misrepresented the evidence by stating that one of the detectives testified that

41

petitioner returned to the scene of the crime after committing the murder.  Petitioner finally claims that the prosecutor falsely argued that Mr. Cronin identified the victim's car being the vehicle that he saw parked on Dye Road at the time he saw petitioner and the victim walking back towards her apartment, claiming that Mr. Cronin wasn't sure that this was the vehicle when shown a picture of it.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo*, 416 U.S. at 646).  Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, two of the victim's neighbors claimed that they heard gunshots at midnight. (Tr. 9/8/10, p. 89).  Another witness claimed to have spoken with the victim at 11:40 p.m.  There was at least some factual support on the record for the prosecutor's argument that the victim was killed between 11:40 p.m. and 12:09 a.m.  Likewise, the evidence established that petitioner came to the victim's apartment the night of the murder, thus, the prosecutor's remarks that petitioner returned to the scene of the murder was based on reasonable inferences from the evidence.  Finally, contrary to petitioner's allegation, Mr. Cronin positively identified the victim's car as being the vehicle he saw on the day in question. (Tr. 9/10/10, pp. 9-10).  Because there was at least some factual support on the

42

record for the prosecutor's argument, the prosecutor's remarks did not deprive Petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

Petitioner next claims that the prosecutor committed misconduct by arguing a "fictitious colloquy" between petitioner and his sister, in which they discussed the murder. Petitioner does not show how the prosecutor's remarks were false or misleading. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004).

Petitioner next claims that the prosecutor tried to inflame the passions of the jury by introducing testimony through the victim's daughter that the victim had tried to get away from petitioner. Petitioner also claims that the prosecutor attempted to inflame the jurors when she cried in front of the jury.

Petitioner's claim is defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 10/1/10, p. 154). *See Cockream v. Jones,* 382 F. App'x. 479, 486 (6th Cir. 2010). Moreover, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002)(citing *Walker v. Gibson*, 228 F. 3d 1217, 1243 (10th Cir. 2000)).

Petitioner lastly contends that the prosecutor committed misconduct by eliciting inadmissible evidence. A prosecutor "does not commit misconduct by asking questions that elicit inadmissible evidence." *Key v. Rapelje,* 634 F. App'x. 141, 148 (6th Cir. 2015).

43

Petitioner is not entitled to relief on his eighteenth and final claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus with prejudice.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

44

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/ Nancy G. Edmunds\
**HON. NANCY G. EDMUNDS**\
UNITED STATES DISTRICT COURT JUDGE

Dated:November 22, 2016